Matthew J. NUTT, Mark
D. Nutt, Plaintiffs,

v.

**The NORWICH ROMAN CATHOLIC DIOCESE, Thomas J. Doyle, S.M., The Sacred Heart Church of Vernon, Connecticut, The Marianist Society, Inc., Brother Stephen Dematteis and Father Michael Melendez, Defendants.**

Civil No. 3:94cv00776(AVC).

United States District Court,
D. Connecticut.

March 28, 1995.

Order Granting Renewed Motion
For Summary Judgment
July 24, 1995.

---

**68**

Holly Abery–Wetstone, Doris B. D'Ambrosio, Wetstone & D'Ambrosio, Farmington, CT, Susan K. Smith, Hartford, CT, for Matthew J. Nutt, Mark D. Nutt, Mary A. Nutt, James D. Nutt.

Joseph T. Sweeney, James M. Sconzo, Halloran & Sage, Hartford, CT, for Norwich Roman Catholic Diocese Corp., Sacred Heart Church of Vernon, CT.

Walter R. Hampton, Jr., Andrea Marie Melanson, Hampton & Hampton, Canton, CT, for Thomas J. Doyle, S.M.

Jeffrey L. Fisher, Richard A. Roberts, Nuzzo & Roberts, Cheshire, CT, for Marianist Society, Inc.

Joseph H. Farrell, Conway, Farrell, Curtin & Kelly, New York City, Terri Ann Knapsack, White, Dombroski, Knapsack & Hillis, New Haven, CT, for Michael Melendez.

Susan K. Smith, Hartford, CT, for amicus curiae Connecticut Network of Victims' Lawyers.

### RULING ON DEFENDANTS' MOTIONS

COVELLO, District Judge.

This is an action for damages in which the plaintiffs claim they were sexually abused by the defendant, Thomas J. Doyle. The complaint alleges the following causes of action against him: 1) "reckless assault and battery"; 2) "negligent assault and battery"; 3) negligence; 4) intentional or reckless infliction of emotional distress; and 5) unintentional infliction of emotional distress. The plaintiffs also assert a claim for negligence against the defendants Stephen DeMatteis and Michael Melendez. The remaining three defendants are institutions, namely, the Sacred Heart Church of Vernon, Connecticut ("Sacred Heart"), the Norwich Roman Catholic Diocesan Corporation ("the Norwich Diocese"), and the Marianist Society, Inc. ("Marianist"). The plaintiffs claim that these three institutional defendants are liable for damages under the doctrine of respondeat superior and their own negligence.

Two of these institutions, Sacred Heart and the Norwich Diocese, now move to dismiss or, in the alternative, for summary judgment (document no. 16) on all counts as to them. The third institution, Marianist, moves only to dismiss (document no. 24) all the counts as they pertain to it.

For the reasons stated herein, the court grants the defendants' motions with respect to the claims based upon the doctrine of respondeat superior. With respect to the negligence claims against the defendants, Sacred Heart and Norwich Diocese, the motion is denied without prejudice. With respect to the negligence claims against the defendant, Marianist, the motion is denied.[1]

---

1. The plaintiffs and the defendants have presented facts and documentary proof outside the complaint. Fed.R.Civ.P. 12(b) states, in pertinent part, as follows:

 If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

 This provision expressly allows the court to examine matters in addition to the pleadings when considering a Rule 12(b)(6) motion to dismiss. "If such additional matters are examined, the motion will be construed as if it had been brought for summary judgment under Fed.

## FACTS

Examination of the pleadings, affidavits, exhibits, and other supporting materials accompanying the motions and the responses thereto discloses the following:

The plaintiffs, Matthew Nutt and Mark Nutt, (hereinafter Matthew and Mark) are twin brothers. They are currently 28 years old and live in Maine. The plaintiffs and their family have been members of the Roman Catholic Church, St. Bernard's Parish Church in Rockville, Connecticut, since 1977. In 1977, the plaintiffs, who were then twelve years old, began serving as altar boys at St. Bernard's.

One of the defendants, Thomas J. Doyle, is a Marianist priest. From 1976 through 1978, Doyle served as parish priest at St. Bernard's. From 1977 to 1978, Doyle was the parish priest for the plaintiffs. From September 1978 to September 1979, he also served at St. Joseph's Church in Clinton, Connecticut; from September 1979 to September 1981, he served at St. Mary's Church in Vernon, Connecticut; and from 1981 to 1992, he served at Sacred Heart Church in Vernon, Connecticut. As a priest, Doyle was required to adhere to the laws and standards of the Roman Catholic Church. The laws and standards of the Roman Catholic Church include a priests' personal commitment to celibacy and expressly prohibit all priests from engaging in any sexual activity of any kind.

All of the above-named Roman Catholic parishes and churches where Doyle served are within the jurisdiction of the defendant, Norwich Diocese.

The defendant, Marianist Society, Inc., admitted and ordained Doyle to the Catholic priesthood and assigned him to the Norwich Diocese, St. Bernard's Parish Church, and Sacred Heart Church. The Marianist Society also provided Doyle with a residence at the Marianist Community House and a condominium rented by the Marianist Society.

From 1979 through 1985 the plaintiffs allege that Doyle showed R-rated and X-rated movies to Mark in the Sacred Heart Rectory and the Marianist Community House in Vernon, Connecticut. In November or December 1980, the plaintiffs further allege that during an out-of-town Christmas shopping trip, Mark and Doyle were forced to stop at a motel in Stockbridge, Massachusetts, due to a snow storm. On this occasion, Doyle allegedly dumped ice on one of the double beds in the room, causing Mark to share a bed with Doyle. During this evening, Doyle allegedly placed his hands inside Mark's underwear and fondled Mark's genitals. Then Doyle allegedly removed Mark's underwear, positioned Mark's hands for mutual masturbation, and performed oral sex on Mark. This same manner of sexual activity also allegedly occurred on the following trips and occasions: in August 1982 on a trip from Maine to Nova Scotia and return; in February 1984, June 1986, and August 1988 on three trips to New York City to see Broadway plays; and in the Summer of 1987 at the Marianist Community House in Vernon, Connecticut. In addition, the plaintiffs allege that from 1986 forward, Doyle's sexual activity included digital anal penetration of Mark.

In July 1983, Mark allegedly informed the defendant Stephen DeMatteis and the defendant, Michael Melendez, that Doyle was sexually abusing him. This report allegedly occurred July 18–23, 1983, during a Marianist family retreat held in New Jersey.

The plaintiffs further claim that from 1979 through 1985, Matthew went on trips with Doyle and watched X-rated movies. During this time, they also allegedly watched R-rated movies at the Sacred Heart Rectory.

On one such trip in 1979, Matthew and Doyle visited Doyle's mother's home on Long Island, New York. The plaintiffs claim that Matthew, then age fourteen, woke to find Doyle had pushed his twin bed next to Matthew's and was fondling Matthew's genitals

R.Civ.P. 56." *Galvin v. Lloyd,* 663 F.Supp. 1572, 1575 (D.Conn.1987). The court has complete discretion in deciding whether to accept such matters, but once it does, conversion to a Rule 56 motion is mandatory. *See Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam). The court elects to accept and analyze the additional materials submitted by the parties. The issues raised in the defendants' motions to dismiss will, therefore, be treated as motions for summary judgment for the purposes of this ruling.

to the point of masturbation. The plaintiffs further claim that between 1979 and 1985, Doyle repeated the sexual act described above on the following occasions: in 1981 while Doyle and Matthew traveled to New York City to see a Broadway play; in February 1982 when they took a trip from Connecticut to New York City, to Cherry Hill, New Jersey, to Baltimore, Maryland, and then to Washington D.C.; and in January 1985, while Matthew and Doyle took a trip to Edgartown, Massachusetts.

In July 1983, during a Marianist family retreat in New Jersey, Matthew allegedly informed Melendez that Doyle had been sexually abusing him. The abuse was allegedly not reported to the legal authorities as required by law.

In mid-September 1992, Matthew and his parents allegedly met with Norwich Diocesan officials and complained about the sexual misconduct of Doyle. Shortly after these complaints, Doyle was relieved of his duties as Pastor of Sacred Heart Church, pending investigation.

### STANDARD

■ On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

### DISCUSSION

#### I. Respondeat Superior

The plaintiffs claim that the institutional defendants are liable for the acts of Doyle under the doctrine of respondeat superior. The defendants contend, however, that they can not be held liable because Doyle acted outside the scope of his employment when he allegedly abused the plaintiffs.

The doctrine of respondeat superior rests on common law agency principles of vicarious liability. Generally, the doctrine states that the master (employer) is responsible for the acts of his or her servant (employee) because the master controls the servant's actions. Restatement (Second) of Agency § 1, at 7. Central to the issue of liability under the doctrine is whether the employee was acting within the scope of his or her employment. If the employee was acting within the scope of his or her employment, the employer may be liable for the plaintiff's acts. Restatement (Second) of Agency, *supra* § 219, at 481.

■ Often, the issue of whether or not an act is within the scope of one's employment is a question of fact for the jury to decide. In some situations, however, the acts of the servant are so clearly without the scope of his authority that the question is one of law. *Gutierrez v. Thorne*, 13 Conn.App. 493, 499, 537 A.2d 527 (1988). The test in Connecticut as to whether an employee is acting within the scope of his or her employment rests on whether the employee was furthering the employer's business. This standard has been applied to an employee's negligent acts, *Levitz v. Jewish Home for the Aged, Inc.*, 156 Conn. 193, 239 A.2d 490 (1968), and to an employee's willful torts such as a fatal stabbing, *Cardona v. Valentin*, 160 Conn. 18, 22, 273 A.2d 697 (1970). The doctrine of respondeat superior focuses on the employee's conduct rather than on the employer's knowledge or approval of the conduct. *Belanger v. Village Pub I*, 26 Conn.App. 509, 603 A.2d 1173 (1992).

■ The plaintiffs claim that Doyle, as an "employee" of the three Roman Catholic institutional defendants, acted within the scope of his employment as a parish priest when he

allegedly sexually assaulted and abused the plaintiffs. Even if Doyle committed the acts alleged by the plaintiffs, however, there is no evidence to support a finding that these acts were in furtherance of his employer's business and therefore within the scope of his employment.

In *Brown v. Housing Authority of New Haven*, 23 Conn.App. 624, 583 A.2d 643 (1990), *certification denied*, 217 Conn. 808, 585 A.2d 1233 (1991), the plaintiff claimed that the defendant's employee, Sam Jones, assaulted and battered him. Jones, a maintenance mechanic, had been driving the defendant's van in between job sites when the intentional and criminal assault occurred. The plaintiff argued that the defendant was liable for Jones's acts under the doctrine of respondeat superior. The court held that "[i]t is clear in the present case that Jones was not furthering the defendant's business interests when he assaulted the plaintiff. His intentional, criminal acts were in no way connected to the defendant's business." *Id.* at 628, 583 A.2d 643. The court upheld the trial court's granting of summary judgment for the defendant because, "[a]s there were no facts before the court from which it could conclude that Jones was furthering the defendants interests, the defendant's nonliability under the doctrine of respondeat superior was properly determined as a matter of law." *Id.*

Similarly, in *A–G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 579 A.2d 69 (1990), the plaintiff claimed Pepperidge Farm was liable for the fraudulent acts of one of its distributors, Anthony Spinelli. Spinelli had defrauded the plaintiff by charging it for Pepperidge Farm products he was not actually delivering. In a criminal proceeding, Spinelli pleaded guilty to larceny. In a subsequent civil jury trial, the court awarded the plaintiff over one million dollars in damages and costs against Spinelli. The jury also awarded the plaintiff damages against Pepperidge Farm. Pepperidge Farm moved to set aside the verdict.

Pepperidge Farm argued that there was insufficient evidence to conclude Spinelli was acting within the scope of his employment and in furtherance of Pepperidge Farm's business when he stole from the plaintiff. The trial court agreed and rendered a judgment notwithstanding the verdict in favor of the defendant. On appeal, the supreme court agreed, stating that " '[o]rdinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business. See, e.g. *Rappaport v. Rosen Film Delivery System, Inc.*, [127 Conn. 524, 526, 18 A.2d 362 (1941)]. But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law.' " *A–G Foods*, 216 Conn. at 207, 579 A.2d 69 (citations omitted). Although a servant may be acting within the scope of employment when the conduct is found negligent, disobedient, or willful, that is not the end of the inquiry. " '[T]he vital inquiry ... is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business....' " *Id.* at 209, 579 A.2d 69 (quoting *Butler v. Hyperion Theatre Co.*, 100 Conn. 551, 124 A. 220 (1924)).

There is nothing in the record to indicate that the alleged sexual abuse by Doyle was motivated by any purpose or object that would serve his employer. Indeed, as the affidavits submitted by the defendants indicate, the laws and standards of the Roman Catholic Church expressly prohibit priests from engaging in any sexual activity of any kind. Thus, even if Doyle engaged in sexually abusive conduct, he did so only after abandoning the church's tenets and his personal commitment to celibacy. Sexually abusive conduct amounts to the abandonment of the Churchs' business. As a matter of law, therefore, the alleged sexual abuse, even if true, can not be said to further the defendant's business and therefore is outside of the scope of employment.

Accordingly, the court grants the defendants'. motions for summary judgment on all counts relating to respondeat superior.

## II. Statute of Limitations

With respect to the plaintiffs' negligence claims, the defendants contend that the claims are time-barred because Connecti-

cut's three-year statute of limitation for tort actions controls the present action. *See* Conn.Gen.Stat. § 52–584[2] or § 52–577[3]. The plaintiffs argue, however, that their claims are not time-barred because Connecticut's seventeen-year statute of limitations, Conn.Gen.Stat. § 52–577d,[4] applies to all causes of action based upon sexually abusive conduct. In response, the defendants argue that since the complaint does not directly charge them with sexual misconduct, § 52–577d does not apply.

Recently, in *Almonte v. New York Medical College*, 851 F.Supp. 34 (D.Conn.1994), the court addressed the dispute at issue in the present action. The plaintiffs in *Almonte* sued New York Medical College alleging that their minor son was sexually assaulted by one of the hospital's psychiatric residents. The resident, Joseph DeMasi, enrolled in the Division of Psychoanalytic training and underwent required analysis as part of that training. Another defendant, Douglas Ingram, was DeMasi's analyst. The plaintiffs alleged several non-sexual tortious causes of action, including negligence and failure to warn. Ingram moved to dismiss the claims against him, in part, on the grounds that these were time-barred by the Connecticut statute of limitations. The court denied the motion. The court concluded that "§ 52–577d is not limited to actions against the actual perpetrators of the sexual abuse, and applies to this case...." *Id.* at 37. In reaching this conclusion, the court stated:

> Quite simply, the statute does not expressly limit its application to offenders; rather, reference to the unambiguous language of the statute indicates that the statutory focus is on *actions* flowing from a particular type of harm and not *parties*. In other words, in defining the scope of the statute, courts should look to "whether the underlying harm was allegedly 'caused by sexual

abuse, sexual exploitation or sexual assault,' § 52–577d, rather than whether the named defendants are potentially primarily or only secondarily liable for the alleged harm."

*Id.*

The court agrees with the analysis set forth in *Almonte*. The statute expressly refers to "actions to recover damages." There is no language in the statute that limits its application to actions against the actual perpetrators of the abuse. Since the plaintiffs filed their complaint within the seventeen years after they attained the age of majority, their complaint is not barred by the statute of limitation.

### III. Free Exercise Clause

The defendants, Sacred Heart and the Norwich Diocese, next argue that even if they are subject to the seventeen-year statute of limitations, the plaintiff's claims must be dismissed because "the Free Exercise of Religion Clause of the First Amendment to the United States Constitution prohibits intrusion by the court into the employment practices of Sacred Heart Church and the Diocese." Specifically, the defendants assert that the court's determination of the plaintiffs' claims of negligent employment would promote exactly that type of state involvement in religion which the First Amendment intends to prevent, i.e., the intrusion of secular interests into matters of purely ecclesiastical concerns. The defendants refer to *Dausch v. Ryske*, 1993 WL 34873 (N.D.Ill.), in which the court stated:

> Any inquiry into the policies and practices of church defendants in hiring or supervising their clergy is barred by the First

---

**2.** Conn.Gen.Stat. § 52–584 provides in part:

> No action to recover damages for injury to the person ... caused by negligence, ... shall be brought but within two years from the date when the injury is first sustained or discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of,....

**3.** Conn.Gen.Stat. § 52–577 provides:

> No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.

**4.** The Conn.Gen.Stat. § 52–577d provides:
> Notwithstanding the provisions of Conn.Gen. Stat. § 52–577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than seventeen years from the date such person attains the age of majority.

Amendment because it might foster excessive state entanglement with religion (Citations omitted.) It might involve the court in making sensitive judgments about the proprieties of the church defendants' supervision in light of their religious beliefs. *Id.* at *6; *see also Schmidt v. Bishop,* 779 F.Supp. 321 (S.D.N.Y.1991). The defendants thus contend that personnel issues involving their clergy must be determined by the laws and policies of the Roman Catholic Church, which are based upon the religious tenets of Roman Catholicism, rather than upon nonecclesiastical law.

The plaintiffs, in response, argue that "[t]o have protection of the [r]eligious [c]lauses, the claims must be rooted in religious belief." *Wisconsin v. Yoder,* 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972); *see also Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). They contend that a claim of negligence does not implicate any religious belief or practice, and therefore, the Free Exercise Clause is inapplicable as a defense to such actions. The court agrees.

The First Amendment to the United States Constitution forbids any "law respecting the establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend. I. The Free Exercise Clause prohibits excessive state entanglement with religion. *See Lemon v. Kurtzman,* 403 U.S. 602, 614–15, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971). Although no Supreme Court decision has determined the applicability of the Free Exercise Clause of the First Amendment as a defense for a religious organization's negligent conduct, the Court has held that the First Amendment does not create blanket tort immunity for religious institutions or their clergy, thus allowing clergy and clerical institutions to be sued for the torts they commit. *United States v. Ballard,* 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944).

Moreover, the court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate. On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition." *Dept. of Human Resources v. Smith,* 494 U.S. 872, 878–79, 110 S.Ct. 1595, 1600, 108 L.Ed.2d 876 (1990). The *Smith* Court went on to state as follows:

As described succinctly by Justice Frankfurter in *Minersville School Dist. Bd. of Ed. v. Gobitis,* 310 U.S. 586, 594–595 [60 S.Ct. 1010, 1012–1013, 84 L.Ed. 1375] (1940): 'Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs. . . .' We first had occasion to assert that principle in *Reynolds v. United States,* 98 U.S. 145 [25 L.Ed. 244] (1879), where we rejected the claim that criminal laws against polygamy could not be constitutionally applied to those whose religion commanded the practice. 'Laws,' we said, 'are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices. . . . Can a man excuse his practices to the contrary because of his religious belief? To permit this would make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself.' *Id.* at 166–67.

.Subsequent decisions have consistently held that the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'

*Id.* at 879, 110 S.Ct. at 1600 (quoting *United States v. Lee,* 455 U.S. 252, 263, n. 3, 102 S.Ct. 1051, 1058, n. 3, 71 L.Ed.2d 127 (1982).

In *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), the Court further defined the 'religious beliefs or practices' afforded protection by the Free Exercise Clause in its examination of the constitutionality of certain civil and criminal laws. The Court stated that: "[a]t a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for reli-

gious reasons." *Id.* at 532, 113 S.Ct. at 2226. The Court exemplified the type of action which might implicate the Free Exercise Clause by citing *McDaniel v. Paty,* 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978), and *Fowler v. Rhode Island,* 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828 (1953). In *McDaniel,* the Court invalidated a state law prohibiting clergymen from holding public offices. In *Fowler,* the Court found unconstitutional a public ordinance which prohibited public preaching by a Jehovah's Witness, but not by a Catholic priest or Protestant minister.

■ Based upon these decisions, it is difficult to see how the plaintiff's claims against the defendants would foster excessive state entanglement with religion. The common law doctrine of negligence does not intrude upon the free exercise of religion, as it does not "discriminate against [a] religious belief or regulate or prohibit conduct because it is undertaken for religious reasons." *Church of Lukumi,* 508 U.S. at 532, 113 S.Ct. at 2226. The court's determination of an action against the defendants based upon their alleged negligent supervision of Doyle would not prejudice or impose upon any of the religious tenets or practices of Catholicism. Rather, such a determination would involve an examination of the defendants' possible role in allowing one of its employees to engage in conduct which they, as employers, as well as society in general expressly prohibit. Since the Supreme Court has consistently failed to allow the Free Exercise Clause to "relieve [an] individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs," the defendants can not appropriately implicate the First Amendment as a defense to their alleged negligent conduct. *Minersville School Dist. Bd. of Ed. v. Gobitis,* 310 U.S. 586, 594–95, 60 S.Ct. 1010, 1013, 84 L.Ed. 1375 (1940).

## IV. Notice and Proximate Cause

The defendants, Sacred Heart and the Norwich Diocese, next argue that even if the free exercise clause does not bar the plaintiffs' claims, the claims nevertheless must be dismissed because the defendants "did not owe the plaintiffs any duty to prevent the alleged sexual misconduct of Father Doyle." Specifically, the defendants argue that "because of the absence of any notice of any alleged sexual misconduct problem relating to Father Doyle, neither Sacred Heart Church nor the Diocese owed the plaintiffs any duty to guard against the alleged sexual misconduct of Father Doyle." The court disagrees.

■ "Negligence is a breach of duty." *Collins v. City Nat'l. Bank & Trust Co.,* 131 Conn. 167, 170, 38 A.2d 582 (1944). "That duty is to exercise due care." *Steinhaus v. Steinhaus,* 145 Conn. 95, 97, 139 A.2d 55 (1958). "The ultimate test of the duty is to be found in the reasonable foreseeability of harm resulting from a failure to exercise reasonable care." *Botticelli v. Winters,* 125 Conn. 537, 542, 7 A.2d 443 (1939). "This does not mean foreseeability of any harm whatsoever or foreseeability of the particular injury which happened." *Noebel v. Housing Authority,* 146 Conn. 197, 201, 148 A.2d 766 (1959) (citing *Orlo v. Connecticut Co.,* 128 Conn. 231, 237, 21 A.2d 402 (1941)). Rather, "[t]he test is: Would the ordinarily prudent man in the position of the defendant, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" *Id.*

In order to defeat the defendants' motion for summary judgment, the plaintiffs must demonstrate that there is a genuine issue of material fact as to whether the risk of injury suffered by the plaintiffs was foreseeable to the defendants. *See Monahan v. Montgomery,* 153 Conn. 386, 216 A.2d 824 (1966). In their complaint, the plaintiffs allege that the defendants had actual or constructive notice of Doyle's sexual misconduct by virtue of the fact that Doyle underwent treatment sessions for sexual abuse of minors during the period of 1979–1993 at Servant's of Paraclete in New Mexico and/or St. Luke's Treatment Center in Maryland.

The affidavits of Bishop Daniel P. Reilly, Reverend Monsignor Paul J. St. Onge, Reverend John J. White, and Thomas J. Madden do not address, and therefore fail to disprove, the allegations that Father Doyle attended treatment sessions for his alleged

sexual misconduct. Therefore, the defendant-movants have failed to "show that there is no genuine issue as to any material fact," with regard to the issue of notice, and cannot prevail on their motion for summary judgment with respect to the negligence claims. *See* Fed.R.Civ.P. 56(c).

Sacred Heart and the Norwich Diocese next argue that, even if the court concludes that the defendants did owe a duty to the plaintiffs, the alleged breach of that duty was not the proximate cause of the plaintiffs' alleged injuries. Specifically, they assert that it was the alleged sexual misconduct of Doyle which proximately caused the plaintiffs' injuries "rather than any possible negligence on the part of either Sacred Heart Church or the Diocese."

 Proximate cause is "[a]n actual cause that is a substantial factor in the resulting harm...." *Doe v. Manheimer*, 212 Conn. 748, 757, 563 A.2d 699 (1989) (quoting *Coburn v. Lenox Homes, Inc.*, 186 Conn. 370, 383, 441 A.2d 620 (1982)). "[A conclusion of proximate cause] becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier of fact." *Id.* (quoting *Trzcinski v. Richey*, 190 Conn. 285, 295, 460 A.2d 1269 (1983)).

Because there is a disputed issue of fact as to whether the defendants had knowledge of Doyle's alleged sexual misconduct, the court cannot determine, as a matter of law, that the defendants' alleged negligence in supervising Doyle was not the proximate cause of the plaintiffs' injuries. Accordingly, the defendants' argument fails. Due to the court's conclusion that there is an issue of fact concerning the defendant's notice of Doyle's alleged sexual misconduct, the court must deny the defendant's motion for summary judgment. This denial however, is without prejudice to the defendant to renew the motion upon presentation, by affidavit or otherwise, of facts disproving the plaintiffs' allegations that during 1979–1993, Doyle underwent treatment for sexual abuse of minors at Servant's of Paraclete in New Mexico and/or St. Luke's Treatment Center in Maryland. Should the defendants submit such evidence, the plaintiffs are given leave to file counter affidavits.

## CONCLUSION

For the foregoing reasons, Sacred Heart's and the Norwich Diocese's motion for summary judgment (document no. 16) is granted in part and denied in part. The motion is granted with respect to each of the plaintiff's claims based upon the doctrine of respondeat superior. Accordingly, Counts 1, 2, 3, 4, 5, 6, 7, 14, 15, 16, 17, 18, 19, and 20 are dismissed to the extent that they allege claims against Sacred Heart or the Norwich Diocese. The motion is denied without prejudice with respect to the negligence claims (Counts 9, 10, 22, and 23). Further, the court grants Marianist's motion (document no. 24) with respect to the plaintiff's respondeat superior claims (Counts 8 and 21), and denies the motion with respect to the negligence claims (Counts 11 and 24).

SO ORDERED.

### RULING ON DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

 This is an action for damages in which the plaintiffs claim they were sexually abused by the defendant, Thomas J. Doyle. On March 28, 1995, the court granted in part and denied in part the defendants', Sacred Heart Church of Vernon, Connecticut ("Sacred Heart") and the Norwich Roman Catholic Diocesan Corporation ("the Norwich Diocese"), motion for summary judgment. *See Nutt v. Norwich Roman Catholic Diocese et al.*, 921 F.Supp. 66 (D.Conn. March 28, 1995). The court granted the defendants' motion with respect to the claims against them based upon the doctrine of respondeat superior. The court denied, without prejudice, the defendants' motion as it pertained to the claims against them based upon negligence. The court gave the defendants leave to renew their motion "upon presentation, by affidavit or otherwise, of facts disproving the plaintiff's allegations that during [the period alleged in the complaint], Doyle underwent treatment for sexual abuse of minors at Servant's of Parcelete in New Mexico and/or St.

Luke's Treatment Center in Maryland." *Id.* at 75. On March 31, 1995, the defendants filed the within renewed motion for summary judgment as to the negligence claims with supporting affidavits. For the reasons stated herein, the court grants the motion.

### DISCUSSION [1]

In support of their renewed motion for summary judgment as to the negligence claims, the defendants argue that the affidavits filed in support thereof

> make unequivocally clear that at no time prior to September 1992, did either of [the defendants] ever have any knowledge or reason to believe or suspect that [Doyle] had ever undergone or participated in any retreat or treatment for sexual abuse of minors or for any sexual misconduct of any kind ... at any retreat or treatment facility at any location.

This, the defendants argue, "clearly establish[es] the total absence of any ... knowledge or notice in this case. This demonstrated absence of any genuine issue of fact as to neither [of the defendants] having had any knowledge or notice of sexual misconduct relating to ... Doyle ... calls for the entry of summary judgment" as to the negligence counts.

Despite the court's express directive granting the plaintiffs leave to file counter affidavits, the plaintiffs have filed no formal response to the defendants' renewed motion. Rather, by way of letter to the court, the plaintiffs refer the court to their prior filings in connection with the defendants' initial motion for summary judgment.

"In order to defeat the defendants' motion for summary judgment [as to the negligence claims], the plaintiffs must demonstrate that there is a genuine issue of material fact as to whether the risk of injury suffered by the plaintiffs was foreseeable to the defendants. *See Monahan v. Montgomery,* 153 Conn. 386, 216 A.2d 824 (1966)." *Nutt v. Norwich Roman Catholic Diocese et al.,* 921 F.Supp. 66, 74 (D.Conn. March 28, 1995); *see Noebel v. Housing Authority,* 146 Conn. 197, 201, 148

A.2d 766 (1959). The plaintiffs, moreover, "may not rest on the mere allegations ... of [their] pleading, but [their] response, by affidavits or ... otherwise ... must set forth specific facts showing that there is a genuine issue for trial. If the [plaintiffs do] not so respond, summary judgment, if appropriate, shall be entered against the [plaintiffs]." Fed.R.Civ.P. 56(e).

The affidavits of Bishop Daniel P. Reilly, Reverend Monsignor Paul J. St. Onge, Reverend John J. White, and Thomas J. Madden expressly state that these individuals had no knowledge or suspicion that Doyle underwent treatment for sexual abuse of minors at the locations or during the time period alleged in the complaint. The plaintiffs, despite being given ample opportunity to do so, have filed no affidavits or any other material whatsoever countering the factual assertions set forth in the defendants' affidavits. There is, therefore, nothing in the record establishing any issue of fact with respect to the defendants' notice of Doyle's alleged sexual misconduct. Accordingly, the defendants are entitled to judgment on the negligence counts as a matter of law.

### CONCLUSION

For the foregoing reasons, the defendants' renewed motion for summary judgment (document no. 71) is granted. Counts nine, ten, twenty-two, and twenty-three are, therefore, dismissed to the extent they allege claims against Sacred Heart or the Norwich Diocese.

SO ORDERED.

---

1. The court incorporates by reference the statement of facts recited in the court's March 28, 1995 "Ruling on Defendants' Motions."