Matthew J. NUTT, Mark D. Nutt, Plaintiffs,

v.

**THE NORWICH ROMAN CATHOLIC DIOCESE, Thomas J. Doyle, S.M., the Sacred Heart Church of Vernon, Connecticut, the Marianist Society, Inc., Brother Stephen Dematteis, and Father Michael Melendez, Defendants.**

**Civil No. 3:94CV00776AVC.**

United States District Court, D. Connecticut.

March 16, 1999.

Holly Abey–Wetstone, Doris B. D'Ambrosio, Farmington, CT, Linda Carole Lehmann, Manchester, CT, for Matthew J. Nutt, Mark D. Nutt.

Holly Abey–Wetstone, Doris B. D'Ambrosio, Farmington, CT, for Mary A. Nutt, James D. Nutt.

Walter R. Hampton, Jr., Andrea Marie Melanson, Laura A. Klein, Hampton & Hampton, Canton, CT, for Thomas J. Doyle, S.M.

Jeffrey L. Fisher, Richard A. Roberts, Erich H. Gaston, Nuzzo & Roberts, Cheshire, CT, for Marionist Society, Inc.

Joseph H. Farrell, Conway, Farrell, Curtin & Kelly, New York City, Terri Ann Knapsack, Domntoski, Knapsack & Hills, New Haven, CT, for Michael Melendez.

John W. Lemega, Lynda Ann Barry, Michael S. Taylor, Kevin E. Majewski, Halloran & Sage, Hartford, CT, for Commercial Union Ins. Co.

### RULING ON THE MARIANIST SOCIETY'S MOTION FOR SUMMARY JUDGMENT

COVELLO, Chief Judge.

This is an action for damages in which the plaintiffs claim they were sexually abused by the defendant, Thomas J. Doyle. On March 28, 1995, the court rendered summary judgment on all claims based upon respondeat superior brought against the Norwich Roman Catholic Diocese ("the Norwich Diocese"), the Sacred Heart Church of Vernon ("Sacred Heart") and the Marianist Society ("Marianist"). On July 24, 1995, the court rendered summary judgment in favor of the Norwich Diocese and Sacred Heart on the plaintiffs' negligence claims.

Marianist has filed the within motion for summary judgment as to the plaintiffs'

negligence claims (counts 11 and 24). Marianist contends first that it is entitled to partial summary judgment, because the claims premised upon alleged acts of sexual abuse that occurred while the plaintiffs were adults is barred by the statute of limitations. Second, Marianist contends that it is entitled to summary judgment because the undisputed material facts establish that Marianist was not negligent in its hiring of the defendant, Doyle, and had no notice of the alleged abuse so as to render Marianist negligent in its supervision of Doyle. The issues presented are: 1) whether the statute of limitations bars the plaintiffs from recovering for the alleged acts of sexual abuse that occurred after they reached the age of majority; and 2) whether there are material facts in dispute that preclude summary judgment in favor of Marianist on the plaintiffs' negligence claims.

For the reasons set forth herein, the court concludes that: 1) the C.G.S. § 52–577 bars the plaintiffs from recovering for acts of alleged sexual abuse that occurred after they reached the age of majority; and 2) there are no material facts in dispute as to whether Marianist negligently *screened* or *hired* Doyle, but there are material facts in dispute as to whether Marianist negligently *supervised* Doyle.

Accordingly, the motion for summary judgment is GRANTED in part and DENIED in part.

## FACTS

The plaintiffs, Matthew Nutt and Mark Nutt, (hereinafter Matthew and Mark) are twin brothers. They were born on December 6, 1965. They are currently 33 years old and live in Maine. The plaintiffs and their family were members of the Roman Catholic Church, St. Bernard's Parish Church in Rockville, Connecticut beginning in 1977. In 1977, the plaintiffs, who were then twelve years old, began serving as altar boys at St. Bernard's.

One of the defendants, Thomas J. Doyle, is a Marianist priest. From 1976 through 1978, Doyle served as parish priest at St. Bernard's. From 1977 to 1978, Doyle was the parish priest for the plaintiffs. From September 1978 to September 1979, he also served at St. Joseph's Church in New London, Connecticut; from September 1979 to September 1981, he served at St. Mary's Church in Clinton, Connecticut; and from 1981 to 1992, he served at Sacred Heart Church in Vernon, Connecticut. As a priest, Doyle was required to adhere to the laws and standards of the Roman Catholic Church. The laws and standards of the Roman Catholic Church include a priests' personal commitment to celibacy and expressly prohibit all priests from engaging in any sexual activity of any kind.

All of the above-named Roman Catholic parishes and churches where Doyle served are within the jurisdiction of the defendant, Norwich Diocese.

The defendant herein, Marianist Society, Inc., admitted and ordained Doyle to the Catholic priesthood and assigned him to the Norwich Diocese, St. Bernard's Parish Church, and Sacred Heart Church. The Marianist Society also provided Doyle with a residence at the Marianist Community House and a condominium rented by the Marianist Society.

From 1979 through 1985, the plaintiffs allege that Doyle showed R-rated and X-rated movies to Mark in the Sacred Heart Rectory and the Marianist Community House in Vernon, Connecticut. In November or December 1980, the plaintiffs further allege that during an out-of-town Christmas shopping trip, Mark and Doyle were forced to stop at a motel in Stockbridge, Massachusetts, due to a snow storm. On this occasion, Doyle allegedly dumped ice on one of the double beds in the room, causing Mark to share a bed with Doyle. During this evening, Doyle allegedly placed his hands inside Mark's underwear and fondled Mark's genitals. Then Doyle allegedly removed Mark's underwear, positioned Mark's hands for mutual masturbation, and performed oral sex

on Mark. This same manner of sexual activity also allegedly occurred on the following trips and occasions: in August 1982 on a trip from Maine to Nova Scotia and return; in February 1984, June 1986, and August 1988 on three trips to New York City to see Broadway plays; and in the Summer of 1987 at the Marianist Community House in Vernon, Connecticut. In addition, the plaintiffs allege that from 1986 forward, Doyle's sexual activity included digital anal penetration of Mark.

In July 1983, Mark allegedly informed the defendant Stephen DeMatteis and the defendant, Michael Melendez, that Doyle was sexually abusing him. This report allegedly occurred July 18–23, 1983, during a Marianist family retreat held in New Jersey.

The plaintiffs further claim that from 1979 through 1985, Matthew went on trips with Doyle and watched X-rated movies. During this time, they also allegedly watched R-rated movies at the Sacred Heart Rectory.

On one such trip in 1979, Matthew and Doyle visited Doyle's mother's home on Long Island, New York. The plaintiffs claim that Matthew, then age fourteen, woke to find Doyle had pushed his twin bed next to Matthew's and was fondling Matthew's genitals to the point of masturbation. The plaintiffs further claim that between 1979 and 1985, Doyle repeated the sexual act described above on the following occasions: in 1981 while Doyle and Matthew traveled to New York City to see a Broadway play; in February 1982 when they took a trip from Connecticut to New York City, to Cherry Hill, New Jersey, to Baltimore, Maryland, and then to Washington D.C.; and in January 1985, while Matthew and Doyle took a trip to Edgartown, Massachusetts.

In July 1983, during a Marianist family retreat in New Jersey, Matthew allegedly informed Melendez that Doyle had been sexually abusing him. The abuse was allegedly not reported to the legal authorities as required by law.

In mid-September 1992, Matthew and his parents allegedly met with Norwich Diocesan officials and complained about the sexual misconduct of Doyle. Shortly after these complaints, Doyle was relieved of his duties as Pastor of Sacred Heart Church, pending investigation.

On May 12, 1994, the plaintiffs filed their complaint.

On March 28, 1995, the court granted in part and denied in part the defendants',Sacred Heart Church of Vernon, Connecticut ("Sacred Heart") and the Norwich Roman Catholic Diocesan Corporation ("the Norwich Diocese") motion for summary judgment. *See* Ruling on the Defendants' Motion for Summary Judgment in *Nutt v. Norwich Roman Catholic Diocese et al.,* 921 F.Supp. 66 (D.Conn.1995). The court granted the motion with respect to all the claims against Sacred Heart, the Norwich Diocese, and Marianist based upon the doctrine of respondeat superior (counts 1, 2, 3, 4, 5, 6, 7, 14, 15, 16, 17, 18, 19). The court denied without prejudice, Sacred Heart's and the Norwich Diocese's motion as it pertained to the negligence claims against them (counts 9, 10, 22, 23). The court denied Marianist's motion as it pertained to the negligence claims against it (counts 11 and 24).[1]

On March 31, 1995, Sacred Heart and the Norwich Diocese filed a renewed motion for summary judgment pertaining to the plaintiffs' claims based upon negligence. The court granted the motion on July 24, 1995. *See* Ruling on Defendants' Renewed Motion for Summary Judgment, *Nutt v. Norwich Roman Catholic Diocese*

---

**1.** With respect to Sacred Heart and the Norwich Diocese, the court gave those defendants leave to renew their motion "upon presentation, by affidavit or otherwise, of facts disproving the plaintiff's allegations that during [the period alleged in the complaint], Doyle underwent treatment for sexual abuse of minors at Servant's of Parcelete in New Mexico and/or St. Luke's Treatment Center in Maryland." *See* Ruling at p. 19.

*et al.,* No. 3:94cv776 (AVC) (D.Conn., July 24, 1995).

On September 30, 1998, Marianist filed the within motion for summary judgment (document no. 171) as to counts 11 and 24, arguing that the plaintiffs' claims of adult sexual abuse are barred by the statute of limitations, and that Marianist had no notice of sexual abuse when the plaintiffs were minors.

## STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

## DISCUSSION

### I. *Statute of Limitations*

The defendant, Marianist, first argues that it is entitled to partial summary judgment on any acts of alleged sexual abuse that occurred when the plaintiffs were adults. Specifically, Marianist argues that Connecticut General Statutes (C.G.S.) § 52–577d only provides a seventeen-year statute of limitations for claims of sexual abuse suffered by *minors,* and that acts of alleged sexual abuse after the plaintiffs attained the age of majority (18), *i.e.* December 6, 1983, are governed the three-year statute of limitations set forth in C.G.S. § 52–577. Because the plaintiffs complaint until May 12, 1994, Marianist argues that any acts of alleged sexual abuse that occurred when the plaintiffs were adults are barred by C.G.S. § 52–577.

The plaintiffs respond that the complaint contains no allegations of "adult sexual abuse," but rather alleges sexual abuse beginning when the plaintiffs were minors, but continuing into the plaintiffs' adulthood. According to the plaintiffs, Marianist's statute of limitations defense is "improper." [2]

■ The court agrees with Marianist that the plain language of C.G.S. § 52–577d establishes a seventeen-year statute of limitations only for incidents of sexual abuse suffered by minors.[3] "In analyzing the plain language [of a statute], the terms must be interpreted according to their ordinary meaning unless their context dictates otherwise." *Nichols v. Warren,* 209 Conn. 191, 196, 550 A.2d 309 (1988). Incidents of alleged sexual abuse suffered by those who have attained the age of majority are excluded from C.G.S. § 52–577d,

---

**2.** The plaintiffs assert that Marianist's challenge to the adult acts of sexual abuse is really an issue of the *admissibility* of those alleged acts into evidence, which Marianist is free to challenge at trial.

**3.** Connecticut General Statutes § 52–577d provides that: "Notwithstanding the provisions of section 52–577, no action to recovery

damages for person injury to a *minor,* including emotional distress, caused by sexual abuse, sexual exploitation, or sexual assault brought by such person later than seventeen years from the date such person attains the age of majority." *See* C.G.S. § 52–577d (emphasis added).

and are governed by the general statute of limitations provision, C.G.S. § 52–577.[4] The latter provision prescribes a three-year time frame in which a tort action may be brought.

Here, the complaint alleges that Doyle sexually abused the plaintiffs beginning when they were minors and continuing into their adulthood. The court concludes that once the plaintiffs attained the age of majority on December 6, 1983, any alleged acts of sexual abuse that occurred *after* that date, are governed by the three-year statute of limitations set forth in C.G.S. § 52–577.

Because the plaintiffs did not file their complaint until May 12, 1994, the court concludes that any alleged acts of adult sexual abuse that occurred *before* May 12, 1991 (three years before the filing of the complaint) are barred by C.G.S. § 52–577.[5]

## II. *Negligence*

The defendant argues that there are no disputes of material fact precluding summary judgment in its favor on the plaintiffs' claims of negligence (counts 11 and 24).

The plaintiff responds that there are disputes of material fact as to whether Marianist had knowledge or notice of the plaintiffs' alleged sexual abuse. The court agrees.

"Negligence is a breach of duty." *Collins v. City Nat'l. Bank & Trust Co.*, 131 Conn. 167, 170, 38 A.2d 582 (1944). "That duty is to exercise due care." *Steinhaus v. Steinhaus*, 145 Conn. 95, 97, 139 A.2d 55 (1958). "The ultimate test of the duty is to be found in the reasonable fore-

seeability of harm resulting from a failure to exercise reasonable care." *Botticelli v. Winters*, 125 Conn. 537, 542, 7 A.2d 443 (1939). "This does not mean foreseeability of any harm whatsoever or foreseeability of the particular injury which happened." *Noebel v. Housing Authority*, 146 Conn. 197, 201, 148 A.2d 766 (1959) (citing *Orlo v. Connecticut Co.*, 128 Conn. 231, 237, 21 A.2d 402 (1941)). Rather, "the test for the existence of a legal duty of care entails: (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of the suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in this case." *Lodge v. Arett Sales Corp.*, 246 Conn. 563, 572, 717 A.2d 215 (citations omitted); *accord Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 989 F.Supp. 110 (D.Conn.1997).

Therefore, in order to defeat Marianist's motion for summary judgment, the plaintiffs must demonstrate that there is a genuine issue of material fact as to whether the risk of injury suffered by the plaintiffs was foreseeable to the defendants. *See Monahan v. Montgomery*, 153 Conn. 386, 216 A.2d 824 (1966).

### A. *Negligent Screening/Hiring*

Marianist first argues that there the undisputed material facts establish that Marianist was not negligent in its screening or hiring of Doyle.[6] Specifically, Mar-

---

**4.** C.G.S. § 52–577 provides that: "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." *See* C.G.S. § 52–577.

**5.** However, the court's conclusion that *recovery* is barred for these acts, does not bar the plaintiffs from *presenting evidence* as to these acts at trial. The court will address the admissibility of those acts at trial.

**6.** Marianist further argues that it had no duty to supervise Doyle. "Duty is a 'legal conclusion about relationships between individuals, made after the fact…[t]he nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual.'" *Lodge v. Arett Sales Corp.*, 246 Conn. 563, 571, 717 A.2d 215 (1998) (citations omitted). The factual circumstances of this case are disputed with respect to Marianist's duty. While it

ianist argues that the thorough screening process that all potential Marianist members undergo, including Doyle, establishes that Marianist was not negligent in its screening or hiring of Doyle.

The plaintiffs respond that there are material facts in dispute as to whether Marianist negligently hired Doyle. However, the plaintiffs have not set forth any specific material factual disputes as to Marianist's screening process of Doyle. Rather, the complaint alleges only that Marianist "failed to properly screen or evaluate [ ] Doyle, to determine his moral fitenss for working with young children and teenagers prior to tor at the time of his ordination...."

In support of its position, Marianist has submitted an affidavit from Stephen Glodek, major superior of the New York Province of the Marianist Society, in which Glodek states that Marianist conducted a rigorous screening process of Doyle, including "extensive interviews, observations, obtaining character references, review of prior employment and school records." *See* Glodek Aff., par. 12. As further support, Marianist cites to a district court opinion which found that extensive screening practices by a religious organization entitled that organization to summary judgment on a plaintiff's negligent hiring claim. *See Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 989 F.Supp. 110, 119 (D.Conn.1997).

▓▓ The plaintiffs have set forth no specific facts to contradict Glodek's affidavit, and have therefore failed to establish the existence of any genuine material factual dispute as ·to whether Marianist negligently screened/hired Doyle. Without any specific facts to rebut this affidavit, the plaintiffs unsupported allegations of negligent screening and hiring must fail, as it is well established that a party may "not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *See Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986); *accord Cirkot v. Diversified Financial Systems, Inc.*, 839 F.Supp. 941, 946 (D.Conn.1993).

The court therefore concludes Marianist is entitled to summary judgment to the extent that the plaintiffs' negligence claims may be based upon a theory of negligent screening or hiring.

### B. *Negligent Supervision*

Marianist next argues that it cannot be held to have negligently supervised Doyle because the undisputed material facts establish that Marianist had no notice of Doyle's wrongful acts.[7] Specifically, Marianist argues that Doyle's conduct towards the plaintiffs did not provide Marianist with notice of the alleged sexual abuse by Doyle, and further, that the Marianist members who allegedly knew of such conduct did not hold sufficiently high positions in Marianist to impute their knowledge to Marianist.[8]

---

is undisputed that Marianist owned the house in which Doyle lived with other Marianist members, and where Doyle brought the plaintiffs on many occasions, Marianist disputes the plaintiffs allegations that it retained significant involvement with and supervisory control over Doyle. Because of these factual uncertainties, the court rejects Marianist's contention that as a matter of law, it had no duty of care to the plaintiffs.

7. Further, in its reply (document no. 180) to the plaintiffs' opposition, Marianist argues that the plaintiffs' failure to file a separate statement of material facts in dispute, is a violation of local rule of civil procedure 9(c) that entitles Marianist to summary judgment.

The court disagrees. Although the plaintiffs failed to comply with the letter of local rule 9(c), the plaintiffs did set forth issues of material fact in dispute within their memorandum of law. The court declines to render summary judgment against the plaintiffs based upon this procedural oversight. However, the plaintiffs must file their local rule 9(c) statement within ten (10) days of this order.

8. Marianist premises this latter assertion upon court decisions which have declined to hold corporations liable when the employees with knowledge of wrongful conduct were not sufficiently high in the corporation's hierarchy. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996);*accord*

The plaintiffs respond that sufficient facts are in dispute as to whether Marianist had actual or constructive knowledge of Doyle's grossly inappropriate conduct towards the plaintiffs, including, *inter alia*, Doyle's overnight trips with the plaintiffs and Doyle's private viewings of (R-rated) movies with the plaintiffs in his bedroom. The court agrees.

■ The court concludes that the plaintiff has established sufficient genuine material facts in dispute with respect to Doyle's inappropriate conduct toward the plaintiffs and Marianist's notice of such conduct. The court therefore concludes that Marianist is not entitled to summary judgment with respect to the plaintiffs' negligence claims premised upon a negligent supervision theory.

## CONCLUSION

For the foregoing reasons, Marianist's motion for summary judgment (document no. 171) as to counts 11 and 24, is GRANTED with respect to allegations of sexual abuse occurring between December 6, 1983 and May 11, 1991. The motion is GRANTED to the extent that the plaintiffs' negligence claims are premised upon screening/hiring. The motion is DENIED, however, to the extent that the plaintiffs' negligence claims are premised upon Marianist's negligent supervision.

*E. Udolf, Inc. v. Aetna Cas. and Sur. Co.*, 214 Conn. 741, 748, 573 A.2d 1211 (1990). Here, the plaintiffs allege that Marianist members living in a house owned by Marianist knew of inappropriate conduct by Doyle, and that Marianist had significant involvement with those members and with the supervision of its house. It is not clear whether the employee/corporate hierarchy model that was the basis of *Van Zant* and *Udolf*, is readily applicable to a religious organization which owns a house in which its members live and work, and whose daily involvement with its members is a fact in dispute. Accordingly, the court rejects Marianist's assertion that "as a matter of law" it cannot be held to have had notice of Doyle's conduct.