## JANE DOE *v.* HARTFORD ROMAN CATHOLIC DIOCESAN CORPORATION ET AL.

Superior Court        Judicial District of        File No. CV970402793
                        New Haven

Memorandum filed April 15, 1998

*Gallagher, Gallagher & Calistro,* for the plaintiff.

*Cooney, Scully & Dowling* and *Danaher, Tedford, Lagnese & Neal,* for the named defendant.

*Danaher, Tedford, Lagnese & Neal,* for the defendant Church of the Holy Spirit et al.

*Boatman, Boscarino & Grasso,* for the defendant Peter Zizka.

I

INTRODUCTION

FRACASSE, J. Presently before the court is the motion to strike the first, second and third counts of

the complaint of the plaintiff, Jane Doe. The motion is filed by the defendants, the Hartford Roman Catholic Diocesan Corporation, the Church of the Holy Spirit and Father John T. O'Connor. The motion should be granted as to the first count and denied as to the second and third counts.

The plaintiff filed this action on July 28, 1997, alleging, in an eight count complaint, that she had suffered injury and damages due to the intentional and negligent acts of the defendants, Father Peter J. Zizka, Father John T. O'Connor, pastor of the Church of the Holy Spirit, the Church of the Holy Spirit (church), located at 183 Church Street in Newington, and the Hartford Roman Catholic Diocesan Corporation (diocese), located at 134 Farmington Avenue in Hartford. The plaintiff alleges, inter alia, that from June, 1975, to September, 1979, Zizka counseled her "concerning spiritual and personal matters and held himself out as a person whom the plaintiff could trust and confide in during a particularly difficult period in her life." During these counseling sessions, the plaintiff, a minor at the time, alleges that Zizka sexually abused her. Counts one, two and three are against the church, the diocese and O'Connor. Count one claims that the church and the diocese are liable for the plaintiff's injury and damages based upon the theory of respondeat superior. Count two claims that the church, the diocese and O'Connor are liable for negligently hiring, training, retaining and supervising Zizka. Count three alleges negligent infliction of emotional distress against the church, the diocese and O'Connor. Counts four through eight are against Zizka and are not at issue in the present motion.

On November 10, 1997, the church, the diocese, and O'Connor filed a motion to strike the first three counts on the grounds that respondeat superior cannot be proven as a matter of law, and that the claims sounding in negligence would require the trial court to entangle

itself excessively in matters of religion, which is prohibited by the first amendment to the United States constitution. The plaintiff filed a memorandum of law in opposition to the motion to strike.

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief may be granted." (Internal quotation marks omitted.) *Waters* v. *Autuori*, 236 Conn. 820, 825, 676 A.2d 357 (1996); *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 214–15, 618 A.2d 25 (1992). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997); *Waters* v. *Autuori*, supra, 825. "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." *Waters* v. *Autuori*, supra, 826; *Westport Bank & Trust Co.* v. *Corcoran, Mallin & Aresco*, 221 Conn. 490, 496, 605 A.2d 862 (1992).

II

COUNT ONE—RESPONDEAT SUPERIOR

Connecticut has "long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business." *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 208, 579 A.2d 69 (1990). "Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business. . . . But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of

law." (Citation omitted; internal quotation marks omitted.) Id., 207.

"While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business . . . ." (Citations omitted; internal quotation marks omitted.) Id., 210; *Glucksman* v. *Walters*, 38 Conn. App. 140, 144, 659 A.2d 1217, cert. denied, 235 Conn. 914, 655 A.2d 608 (1995). "Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Internal quotation marks omitted.) *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, supra, 216 Conn. 210.

The defendants argue that they cannot be held vicariously liable for the alleged tortious acts of Zizka, as a matter of law, because it cannot be proven that Zizka was acting within the scope of his employment. They cite cases that have held as a matter of law, when a priest is alleged to have sexually abused a minor, such action cannot be considered within the scope of his employment or in furtherance of the interests of the church. *Nutt* v. *Norwich Roman Catholic Diocese*, 921 F. Sup. 66, 70–71 (D. Conn. 1995).

The plaintiff relies upon *Mullen* v. *Horton*, 46 Conn. App. 759, 700 A.2d 1377 (1997), for the proposition that a church may be held vicariously liable for sexual abuse by a priest under the doctrine of respondeat superior. In *Mullen*, a Roman Catholic priest, who was also a practicing psychologist, operated a therapy center. All profits from the center were given to the priest's order. Id., 761. During his treatment of one adult patient, the priest and the patient began a two and one-half year

sexual relationship, with sexual contact occurring during the counseling sessions. Id. The *Mullen* court reasoned that the priest's counseling practices could be seen as "a misguided attempt at pastoral-psychological counseling, or even an unauthorized, unethical, tortious method of pastoral counseling, but not an abandonment of church business." Id., 765–66.[1] The court noted that the diocese defendants monetarily benefited from the priest's tortious conduct because he was obligated to turn over directly to the diocese any and all profits derived from his counseling office. Id., 770.

*Mullen*, however, is distinguishable from the present case on the same reasoning that the *Mullen* court used to distinguish *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, supra, 216 Conn. 200, and *Nutt* v. *Norwich Roman Catholic Diocese*, supra, 921 F. Sup. 66. Unlike *Mullen*, *A-G Foods, Inc.* and *Nutt*, both involved actions by employees which did not serve their employers due to the fact that the employers did not substantially benefit, directly or indirectly, from the illegal acts. See *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, supra, 209; *Nutt* v. *Norwich Roman Catholic Diocese*, supra, 71. In *A-G Foods, Inc.*, a case involving a consignment contract, a fraudulent scheme was devised by a franchise employee of Pepperidge Farm to charge grocery stores for food that was not delivered. *A-G Foods Inc.* v. *Pepperidge Farm, Inc.*, supra, 209. The court found that a claim under respondeat superior was not factually supportable because no evidence was presented which demonstrated that actual sales had increased during the employee's fraudulent scheme or that sales decreased after discovery of the fraud. Id. Our Supreme Court held that "any

---

[1] See also *Glucksman* v. *Walters*, supra, 38 Conn. App. 145–48 (YMCA employee severely assaulted basketball player in "misguided effort" to maintain order); *Pelletier* v. *Bilbiles*, 154 Conn. 544, 548, 227 A.2d 251 (1967) (employee assaulted customer who littered in store in "misguided method of discouraging patrons" from causing disturbances).

possible indirect benefit [the employer] might have received . . . was so de minimus that, as a matter of law, it does not support a conclusion that [the employee] acted within the scope of his employment and in furtherance of [his employer's] business." Id.

*Nutt* is more persuasive in its reasoning in denying a cause of action for respondeat superior based upon allegations of sexual abuse by a parish priest. In that case, the priest showed pornographic movies to two twelve year old altar boys, then molested them over a six year period when they were on out-of-town trips. *Nutt* v. *Norwich Roman Catholic Diocese*, supra, 921 F. Sup. 69–70. The federal District Court stated: "Sexually abusive conduct amounts to the abandonment of the Church's business. As a matter of law, therefore, the alleged sexual abuse, even if true, can not be said to further the [employer's] business and therefore is outside of the scope of employment." Id., 71; see also *Tichenor* v. *Roman Catholic Church of New Orleans*, 32 F.3d 953, 959 (5th Cir. 1994) ("[w]e reject the contention that [the priest] was acting within the scope of his employment"); *Kennedy* v. *Roman Catholic Diocese of Burlington*, 921 F. Sup. 231, 233 (D. Vt. 1996) (priest's sexual misconduct was not within scope of his employment); *Rita M.* v. *Roman Catholic Archbishop of Los Angeles*, 187 Cal. App. 3d 1453, 1461, 232 Cal. Rptr. 685 (1986) ("[i]t would defy every notion of logic and fairness to say that sexual activity between a priest and a parishioner is characteristic of the Archbishop of the Roman Catholic Church . . . [or] that the Archbishop 'ratified' the . . . acts of the priests"); *Joshua S.* v. *Casey*, 206 App. Div. 2d 839, 615 N.Y.S.2d 200 (1994) (alleged sexual assault by clergy was not within scope of employment); *Byrd* v. *Faber*, 57 Ohio St. 3d 56, 60, 565 N.E.2d 584 (1991) (church did not hire minister to abuse congregation sexually nor did it have reason to foresee such abuse).

As noted by the Appellate Court in *Mullen*, Nutt is distinguishable from *Mullen* because the alleged sexual abuse was perpetrated upon a minor. As the Appellate Court noted: "While a trier of fact could reasonably find that consensual sexual relations between two adults arising out of emotional, spiritual church sponsored counseling sessions represented a negligent and misguided effort at pastoral counseling, a trier of fact could *not* reasonably find that a priest's showing pornographic films to young boys and then criminally sexually molesting them in out-of-town motel rooms merely represented a negligent and misguided effort at pastoral counseling. The facts of *Nutt* clearly represent a situation in which the priest wholly abandoned his pastoral duties. Thus, *Nutt* represents one of those exceptional cases in which the servant's digression from duty is so clear cut that the disposition of the case is a matter of law." (Emphasis in original.) *Mullen* v. *Horton*, supra, 46 Conn. App. 770–71.

*Mullen* cannot be relied on in the present case to find the defendants liable under a theory of respondeat superior. The present case involves a minor who was sexually abused by a priest who was supposed to be counseling her through a difficult emotional period of her life. This case represents one of those "exceptional" cases where the employee's act was clearly a digression from duty and beyond the scope of employment. *Nutt*, like the present case, is representative of the characteristics of such cases: the victim is a minor, who legally lacks the capacity to consent to sexual relations, rendering the sexual relationship, as a matter of law, nonconsensual; the sexual abuse did not further the interests of the church; and, the church did not directly or indirectly profit from the priest's actions. See *Nutt* v. *Norwich Roman Catholic Diocese*, supra, 921 F. Sup. 70–71.

In ruling on a motion to strike, the court can only look to those facts alleged in the complaint, and it must

construe those facts most favorably to the plaintiff. *Faulkner* v. *United Technologies Corp.*, supra, 240 Conn. 580. A motion to strike is properly denied if the facts provable in the complaint would support a cause of action. *Waters* v. *Autuori*, supra, 236 Conn. 826. This court cannot construe the facts to support a claim of respondeat superior. The facts alleged in count one, even if proven, are insufficient to constitute actions within the scope of Zizka's employment or in further-ance of the church's business. See *Nutt* v. *Norwich Roman Catholic Diocese*, supra, 921 F. Sup. 66. Accord-ingly, the defendants' motion to strike count one should be granted.

## III

### COUNTS TWO AND THREE—NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In reference to the second count regarding negligent hiring, training, retention and supervision, the defen-dants argue that the allegation should be stricken "for the reason that such claim cannot be entertained by a civil court consistent with the provisions of the First Amendment to the United States Constitution as the court is prohibited from entangling itself in matters of religion, and/or matters that necessarily involve analysis and determination of ecclesiastical relationships, duties and responsibilities." With respect to the third count, negligent infliction of emotional distress, the defen-dants move to strike the count on the ground that "such a claim cannot be entertained without excessive entan-glement in matters of religion, and/or matters that nec-essarily involve analysis and determination of ecclesiastical relationships, duties and responsibili-ties." With respect to the third count, negligent infliction of emotional distress, the defendants move to strike the count on the ground that "such a claim cannot be

entertained without excessive entanglement in matters of religion and/or matters that necessarily involve analysis and determination of ecclesiastical relationships and duties and responsibilities."

"The First Amendment to the United States Constitution forbids any law respecting the establishment of religion, or prohibiting the free exercise thereof. . . . The Free Exercise Clause prohibits excessive state entanglement with religion. . . . Although no Supreme Court decision has determined the applicability of the Free Exercise Clause of the First Amendment as a defense for a religious organization's negligent conduct, the Court has held that the First Amendment does not create blanket tort immunity for religious institutions or their clergy, thus allowing clergy and clerical institutions to be sued for the torts they commit." (Citations omitted; internal quotation marks omitted.) *Nutt* v. *Norwich Roman Catholic Diocese*, supra, 921 F. Sup. 73.

The court is aware of the recently released decision of *Reynolds* v. *Zizka*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV950555222S (March 5, 1998) (*Aurigemma, J.*). This court agrees with the decisions in *Nutt* and *Reynolds* that the court's determination of an action against the movants based on their negligent supervision of a priest "would not prejudice or impose upon any of the religious tenets or practices of Catholicism." *Nutt* v. *Norwich Roman Catholic Diocese*, supra, 921 F. Sup. 74.

IV

CONCLUSION

Accordingly, the motion is granted as to the first count of the plaintiff's complaint and the first count is stricken; the motion is denied as to the second and third counts.