Jane DOE, Plaintiff,

v.

The NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION, St. Columba Church and Patrick J. Sullivan, Defendants.

No. 3:02CV1649 (GLG).

United States District Court, D. Connecticut.

June 26, 2003.

Hubert J. Santos, Sandra L. Snaden, Santos & Seeley, Hartford, CT, for Plaintiff.

Michael E. Driscoll, Brown, Jacobson, Tillinghast, Lahan & King, Norwich, CT, Jeffrey C. Pingpank, John W. Sitarz, Lorinda S. Coon, Conney, Scully & Dowling, Hartford, CT, Daniel M. McCabe, Eveleigh, McCabe & Schelz, Stamford, CT, for Defendants.

John W. Sitarz, Lorinda S. Coon, Cooney, Scully & Dowling, Hartford, CT, for Third–Party Plaintiff.

## *OPINION*

GOETTEL, District Judge.

Plaintiff, Jane Doe, has brought this action against Defendants Patrick J. Sullivan, The Norwich Roman Catholic Diocesan Corporation ("Diocese"), and St. Columba Church ("St.Columba") alleging that Sullivan sexually abused her as a teenager. Counts One through Six of the Second Amended Complaint ("complaint") are asserted only against Sullivan, and Counts Seven through Ten are brought against St. Columba and the Diocese. Pursuant to Rule 12(b)(6), Fed.R.Civ.P., St. Columba has moved to dismiss Counts Seven (respondeat superior) and Ten (breach of fiduciary duty) in their entirety, as well as Counts Eight (negligence) and Nine (negligent infliction of emotional distress) to the extent that Plaintiff seeks to impose liability on the church for failing to prevent Sullivan's alleged sexual misconduct, even though these counts do not explicitly allege St. Columba's knowledge of the danger. [**Doc. 27.**] Diocese has also moved to dismiss Counts Eight and Nine to the extent that Plaintiff alleges liability without alleging Diocese's knowledge of the danger. Diocese also moves to dismiss Count Ten in its entirety. [**Doc. 25.**] In addition, Diocese has filed a supplemental motion to dismiss Count Seven in its entirety. [**Doc. 39.**]

For the reasons set forth below, Defendant St. Columba's and Defendant Diocese's Motions to Dismiss are GRANTED IN PART and DENIED IN PART.

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., the Court is required to accept as true all factual allegations of the complaint and to draw all reasonable inferences in favor of the plaintiff, as the non-moving party. *See Krimstock v. Kelly,* 306 F.3d 40, 47–48 (2d Cir.2002). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). A court must not consider whether the claim will ultimately be successful, but should merely "assess the legal feasibility of the complaint." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (citation omitted).

A complaint need not set out the facts in detail. The Federal Rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), Fed.R.Civ.P. The Court "may also consider matters of which judicial notice may be taken under Fed. R.Evid. 201." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). However, conclusory allegations of the legal status of Defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss. *In re Am. Express Co. S'holder Litig.,* 39 F.3d 395, 400 n. 3 (2d Cir.1994).

## DISCUSSION

Plaintiff, Jane Doe, alleges that while a parishioner at St. Columba Church (Compl. at 2, First Count ¶ 7), she was sexually assaulted and abused by Patrick Sullivan (*id.* at ¶ 8), a Roman Catholic priest assigned to perform various tasks on behalf of the Diocese and St. Columba (*id.* at ¶ 5). From 1968 through 1969, Sullivan allegedly sexually abused Plaintiff who was aged 15 to 16 years old at the time. (*Id.* at ¶ 8.) The alleged sexual abuse occurred at various locations including the St. Columba rectory. (*Id.* at ¶ 9.)

Plaintiff has not alleged any other facts concerning the circumstances surrounding the alleged sexual assaults.

This being a diversity action, we must apply Connecticut law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## I. Count Seven—Respondeat Superior

■ In order for an employer to be liable for the intentional torts of its employee under respondeat superior, the employee must have been acting "in furtherance of the employer's business." *A–G Foods Inc. v. Pepperidge Farm, Inc.,* 216 Conn. 200, 208, 579 A.2d 69 (1990). Usually, "it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business.... But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law." *Id.* at 207, 579 A.2d 69 (internal citations omitted).

Cases of sexual abuse often represent such a strong deviation from furthering an employer's business. In most cases of alleged sexual abuse by priests, the courts have held that respondeat superior is not applicable to hold a church or diocese liable, because such acts by the priests are not in furtherance of the church's business. *See Nutt v. Norwich Roman Catholic Diocese,* 921 F.Supp. 66, 71 (D.Conn.1995); *Dumais v. Hartford Roman Catholic Diocese,* No. X07CV010077631S, 2002 WL 31015708, at *1 (Conn.Super. July 31, 2002); *Doe v. Hartford Roman Catholic Diocesan Corp.,* 45 Conn.Supp. 388, 395, 716 A.2d 960 (Conn.Super.Ct.1998).

In *Nutt,* former altar boys claimed that a priest had shown them pornographic movies and taken them on trips where he engaged in sexual abuse. *Nutt,* 921 F.Supp. at 69–70. The court noted that the Roman Catholic Church expressly forbids its priests from engaging in any sexual activity, so any form of sexually abusive acts would demonstrate abandonment of the church's business; thus, the court granted the defendant church's and diocese's motions for summary judgment on all counts relating to respondeat superior. *Id.* at 71.

Even at the pleading stage, Connecticut courts have dismissed claims of respondeat superior in cases of sexual abuse by a priest, because as a matter of law, those acts did not further the interests of the church or diocese. *See Doe v. Hartford Diocesan,* 45 Conn.Supp. at 395, 716 A.2d 960; *Dumais,* 2002 WL 31015708, at *1.

In *Doe v. Hartford Diocesan,* a minor, female parishioner alleged that her priest had sexually abused her. 45 Conn.Supp. at 389, 716 A.2d 960. The court determined that there was a clear digression from duty and the misconduct was beyond the scope of employment, because the church would neither benefit directly nor indirectly from the priest's actions. Therefore, it granted the pastor's, church's, and diocese's motion to strike the claim of respondeat superior, because even if the alleged facts were proven, they were insufficient to constitute actions within the scope of the priest's employment. *Id.* at 394–95, 716 A.2d 960.

In another case of alleged sexual abuse by a priest, a Connecticut court also granted a motion to strike a claim of vicarious liability, because "the plaintiff [made] no claim that [the priest's] sexual abuse of him was done in any way to advance or further the business of the church or archdiocese, even in some misguided manner." *Dumais,* 2002 WL 31015708, at *1. Therefore, the court held that the counts failed to set forth a cause of action imposing

vicarious liability upon the defendant arch-diocese, church, and archbishop. *Id.*

■ Similarly, in this case, Plaintiff has merely made the conclusory statement that "Sullivan was acting within the scope of his duties as a Roman Catholic priest for the Defendant Diocese and/or the Defendant St. Columba Church and within the scope of his employment with the aforementioned Defendants and in furtherance of their business purpose." (Compl. at 11, Seventh Count ¶ 14.) As a Roman Catholic priest, Sullivan would have abandoned the business of the Church by engaging in sexual conduct with Plaintiff, which is expressly forbidden, so as a matter of law it could not be shown that his actions were in furtherance of Church business. *See Nutt,* 921 F.Supp. at 71.

Plaintiff urges us to deny the motion because respondeat superior has been applied in some cases of sexual abuse by priests, but those cases involved very unique circumstances, which are not present here. *See Martinelli v. Bridgeport Roman Catholic Diocesan Corp.,* 989 F.Supp. 110, 118 (D.Conn.1997), *aff'd in part and rev'd in part on other grounds after trial,* 196 F.3d 409 (2d Cir.1999); *Mullen v. Horton,* 46 Conn.App. 759, 765–766, 700 A.2d 1377 (1997).

In *Martinelli,* the plaintiff claimed that a priest attempted to teach the sacraments to him and other teenage boys by using sexual contact. *Martinelli,* 989 F.Supp. at 118. The district court denied summary judgment for the diocese, because there was a genuine dispute as to whether the priest's activities represented a "total departure from the [d]iocese's business." *Id.*

In *Mullen,* the plaintiff alleged that her priest, a trained psychologist to whom she had gone for counseling, was involved in a sexual relationship with her. *Mullen,* 46 Conn.App. at 761–62, 700 A.2d 1377. In that case, because of the priest's vow of

poverty, all of the profits from the priest's counseling business went to the church. *Id.* at 765, 700 A.2d 1377. In addition, the plaintiff had specifically sought counseling from this priest because of his "joint status as a psychologist and a Roman Catholic priest." *Id.* at 761, 700 A.2d 1377. The court found that these factors suggested that a trier of fact could reasonably determine that the sexual relationship stemmed from the priest's church-sanctioned counseling position, and thus might *not* have been an abandonment of Church business. *Id.* at 765–66, 700 A.2d 1377.

Unlike *Martinelli* and *Mullen,* in this case, Plaintiff has not alleged any facts to indicate that the nature of the alleged sexual acts by the priest somehow furthered the Church's business. The allegations of this case are more similar to those cases where the courts have found that as a matter of law respondeat superior does not apply. Accordingly, we GRANT Defendants' Motions to Dismiss Count Seven without prejudice to Plaintiff's filing an amended complaint alleging sufficient facts to indicate that the alleged misconduct by the priest was conducted in furtherance of Church's and/or Diocese's business.

## II. Count Eight—Negligence

In Count Eight, Plaintiff claims that St. Columba and Diocese were negligent in any of the following ways:

(a) Failing to properly screen, evaluate, or investigate Sullivan's past activities, moral fitness for working with children and teenagers, and fitness for the priesthood prior to his ordination and assignment to the Diocese (Compl. at 12, Eighth Count ¶¶ 10(a), 10(b), 10(c));

(b) Failing to properly supervise and investigate Sullivan's activities while he was within the jurisdiction of the Diocese and while he was residing at St.

Columba's rectory, failing to recognize Sullivan's inappropriate behavior which made him ill-suited for the priesthood or for which he should have been counseled, and failing to recognize warning signs that Sullivan was engaging in sexual abuse with a minor (*id.* at ¶¶ 10(d), 10(e), 10(j), 10(1));

(c) Failing to establish guidelines and procedures to prevent injuries to Plaintiff, failing to properly train Sullivan regarding his role as a priest and the boundaries of appropriate behavior and decorum in the rectory, and failing to provide appropriate counseling for priests having difficulties with the constraints of celibacy (*id.* at ¶¶ 10(f), 10(g), 10(I));

(d) Due to the frequency, duration, and location of the alleged misconduct, Defendants should have known or did know that Sullivan was engaging in sexual abuse with Plaintiff on Church premises (*id.* at ¶¶ 10(h), 10(k)).

Defendants argue that the only aspects of this negligence count that should be permitted are the allegations involving negligent disregard of a known danger, and that the rest of the count should be dismissed because (a) the Eighth Count involves entanglement of the Court in religious matters of the Church, violating the First Amendment; (b) the Eighth Count alleges liability for failure to prevent harm to a third party in the absence of *knowledge* of the danger; and (c) even if Defendants owed a duty to Plaintiff, they would not be liable under the allegations of the Eighth Count, because the harm would have been proximately caused by Sullivan, not by St. Columba or Diocese. We are not persuaded by these arguments.

## A. First Amendment Entanglement

The First Amendment prohibits Congress from making "any law respecting an establishment of religion or prohibiting the free exercise thereof ...," U.S. Const. Amend. I, and is applied to the states through the Fourteenth Amendment, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993).

■ In cases "where resolution of disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a [hierarchical] church." *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). "But, [the Supreme] Court never has suggested that those constraints similarly apply outside the context of such intraorganizational disputes." *Gen. Council on Fin. & Admin. of United Methodist Church v. Super. Ct. of Cal.*, 439 U.S. 1355, 1372, 99 S.Ct. 35, 58 L.Ed.2d 63 (1978) (internal citations omitted). The Connecticut Supreme Court recognized that it is "well-established that state judicial intervention is justified when it can be accomplished by resort[ing] to *neutral principles* of the law ... that eschew consideration of doctrinal matters such as the ritual and liturgy of worship or the tenets of faith." *N.Y. Annual Conference of the United Methodist Church v. Fisher*, 182 Conn. 272, 281, 438 A.2d 62 (1980) (emphasis added) (applying *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979)).

The Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate. On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition." *Nutt*, 921 F.Supp. at 73 (quoting *Dept. of Human Res. v. Smith*,

494 U.S. 872, 878–79, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)).

St. Columba concedes that most Connecticut authorities "have found that allegations of this nature can be adjudicated without running afoul of the First Amendment" (Def. St. Columba's Reply Mem. at 6), but urges us to follow the decisions of other states that have adopted a more restrictive approach to the role of the courts in such matters. *See. e.g., Ayon v. Gourley,* 47 F.Supp.2d 1246 (D.Colo.1998), *aff'd,* 185 F.3d 873, 1999 WL 516088 (10th Cir.1999); *Schmidt v. Bishop,* 779 F.Supp. 321 (S.D.N.Y.1991).

In a case of priest sexual misconduct, the Second Circuit held it was permissible under the First Amendment for the jury to have considered church doctrine to determine if a fiduciary duty arose between a parishioner and the diocese. *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.,* 196 F.3d 409, 431 (2d Cir.1999). The court noted that "Martinelli's [parishioner's] claim was brought under Connecticut law, not church law; church law is not ours to assess or to enforce. Martinelli's claim neither relied upon nor sought to enforce the duties of the [d]iocese according to religious beliefs, nor did it require or involve a resolution of whether the [d]iocese's conduct was consistent with them." *Id.*

In *Nutt,* the district court held that "[s]ince the Supreme Court has consistently failed to allow the Free Exercise Clause to relieve an individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs, the defendants [church and diocese] cannot appropriately implicate the First Amendment as a defense to their alleged negligent conduct." *Nutt,* 921 F.Supp. at 74 (internal quotation and citation omitted).

Relying on the district court's decision in *Nutt,* a Connecticut court noted that the "Free Exercise Clause might well prohibit this court from interfering in the manner in which the [d]iocese supervised a priest's performance of Mass, or confession, but it certainly cannot prohibit this court from determining whether the [d]iocese should be liable for negligently allowing its employees to engage in criminal conduct." *Reed v. Zizka,* No. CV 950555221S, 1998 WL 123050, at *5 (Conn.Super. March 5, 1998); *see also Reynolds v. Zizka,* No. CV 950555222S, 1998 WL 123047, at *5 (Conn.Super. March 5, 1998).

Connecticut courts have followed the decisions of *Nutt, Reed,* and *Reynolds,* holding that there is no entanglement issue in determining whether a church or diocese was negligent in supervising its priests. *See Rosado v. Bridgeport Roman Catholic Diocesan Corp.,* 45 Conn.Supp. 397, 402, 716 A.2d 967 (Conn.Super.Ct.1998); *Doe v. Hartford Diocesan,* 45 Conn.Supp. at 395–96, 716 A.2d 960 (denying motion to strike count regarding negligent hiring, training, retention and supervision of clergy).

The same analysis applies directly to the current case. The focus of all of these cases has been whether neutral tort concepts can be applied to negligence claims against religious organizations. Several courts outside this jurisdiction have refused to adjudicate cases regarding negligent supervision of priests by the church for fear that "any inquiry into the policies and practices of the Church Defendants in hiring or supervising their clergy raises ... First Amendment problems of entanglement ... which might involve the Court in making sensitive judgments about the propriety of the Church Defendants' supervision in light of their religious beliefs... [and][a]ny award of damages would have a chilling effect leading indirectly to state control over the future conduct of affairs of a religious denomination," *Schmidt,* 779 F.Supp. at 332 (internal citations omitted); *see also Ayon,* 47

F.Supp.2d at 1249; *Swanson v. Roman Catholic Bishop of Portland,* 692 A.2d 441, 445 (Me.1997). The District Court of Connecticut in *Nutt,* 921 F.Supp. at 72–72, rejected such an argument, because the First Amendment does not offer blanket immunity for religious institutions, and because an inquiry into the defendants' alleged negligent supervision would not "prejudice or impose upon any of the religious tenets or practices of Catholicism. Rather such a determination would involve an examination of the defendants' possible role in allowing one of its employees to engage in conduct which they, as employers, as well as society in general expressly prohibit." *Id.* at 74.

■ This Court recognizes the concerns of religious institutions regarding entanglement of the courts in examining their religious practices. This Court does not, will not, and cannot sit as the reviewing authority for religious practices and doctrinal matters. But, as far as negligent supervision and employment are concerned, such inquiries can generally be conducted without any entanglement in the religious doctrines and practices of the church. Here, Plaintiff has broadly alleged negligent hiring and supervision of Sullivan by St. Columba and Diocese. As we construe her claims, they do not involve the entanglement of this Court with the church's religious practices. However, we would caution the parties to carefully limit the scope of this claim to the secular matters of negligent hiring and supervision.

Accordingly, the Motion to Dismiss Count Eight on the basis of First Amendment entanglement is DENIED.

### B. Whether Sufficient Knowledge Is Alleged or Can Be Inferred to Show a Duty and Properly State a Claim for Negligence

"The existence of a duty of care is an essential element of negligence." *Coburn v. Lenox Homes, Inc.,* 186 Conn. 370, 375, 441 A.2d 620 (1982). Without a legal duty, there cannot be actionable negligence. *Neal v. Shiels, Inc.,* 166 Conn. 3, 12, 347 A.2d 102 (1974). The determination of whether a duty exists is a matter of law, and only if a duty is found to exist, does the trier of fact then determine if the duty was violated. *Lodge v. Arett Sales Corp.,* 246 Conn. 563, 571, 717 A.2d 215 (1998). "Although no universal test for duty ever has been formulated, our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." *Fraser v. United States,* 236 Conn. 625, 633, 674 A.2d 811 (1996) (internal quotation marks, citation, and alteration omitted).

■ In cases regarding the liability of religious organizations for negligent supervision of their clergy, the courts have held that in order for a duty to have existed, the organizations must have known or should have known that misconduct was occurring. *See, e.g., Beach v. Jean,* 46 Conn.Supp. 252, 264, 746 A.2d 228 (1999); *See v. Bridgeport Roman Catholic Diocesan Corp.,* No. CV 930302072S, 1997 WL 466498, at *6 (Conn.Super. July 31, 1997). For example, in *Nutt,* the district court denied a church's and diocese's original motion for summary judgment because the facts regarding their knowledge of the priest's alleged misconduct were disputed. 921 F.Supp. at 75. The church and diocese then submitted to the court affidavits indicating that church officials had no notice of the sexual misconduct, which were not challenged by the plaintiffs, so the court granted a renewed motion for summary judgment. *Id.* at 76.

In another case, the district court granted summary judgment to a diocese because there was no "evidence that could

reasonably give rise to an inference that [the priest's] sexual abuse was the *foreseeable* result of any action or omission by the [d]iocese." *Martinelli*, 989 F.Supp. at 120 (emphasis added).

All of these cases, however, have involved motions for summary judgment, and in those cases, the courts have relied on the many *facts* demonstrating defendants' knowledge and foreseeability of harm, such as the treatment of priests for sexual abuse, *Nutt*, 921 F.Supp. at 74, a diocesan "policy of reporting, investigating and dealing with any of its priests alleged to have engaged in any misconduct," *Beach*, 46 Conn.Supp. at 264, 746 A.2d 228, records regarding moral character and the ability to relate to children effectively, *id.*, and affidavits indicating that church officials were notified about sexual abuse, *See*, 1997 WL 466498, at *8.

██ Defendants argue that all of the claims in Count Eight except for subparagraph 10(j) (failing "to recognize the inappropriate behavior and activities of ... Sullivan which made him ill-suited to the priesthood and for which he should have been counseled") should be dismissed, because Plaintiff has not alleged in each of those claims that Defendants knew about Sullivan's misconduct. But Defendants' argument goes too far. The facts that courts have looked toward in cases such as this one indicate that Diocese and St. Columba could only be liable if they knew or should have known about Sullivan's alleged misconduct. Many of the other allegations in paragraph ten could be useful in evaluating whether Defendants had knowledge of the abuse or if it was foreseeable.

For example, it might be necessary to explore Defendants' supervision of Sullivan, because if he had been properly supervised that could suggest that Defendants truly lacked knowledge of the alleged abuse. But, if improper supervision occurred, that could indicate that Defendants should have known about the alleged misconduct. If we were to dismiss these claims prematurely, some potentially relevant fact-finding would be precluded.

At this point, all we are concerned with is whether Plaintiff has alleged enough to state a claim. Even though some of the allegations are quite broad, they do provide sufficient information from which knowledge could be inferred, even if it is not explicitly alleged.

Nevertheless, we again caution both parties that just as this Court will not entangle itself in the Church's religious practices or doctrine, it will not examine the specific employment practices of the Church and Diocese unless they clearly indicate that Defendants knew or should have known that Sullivan was likely to engage in sexual misconduct. It is not the place of this Court to determine the fitness of individuals for the priesthood or the internal policies that are maintained to promote the clergy's morality. We are merely concerned with whether Defendants had knowledge or should have known about Sullivan's alleged misconduct.

Accordingly Defendants' Motion to Dismiss Count Eight for failure to state a claim is DENIED. Count Eight will be maintained in its entirety along with the caution to the parties that is indicated in this opinion.

## C. Proximate Cause

██ Under Connecticut law, proximate cause is "an actual cause that is a substantial factor in the resulting harm." *Doe v. Manheimer*, 212 Conn. 748, 757, 563 A.2d 699 (1989) (internal quotation and citations omitted) *overruled on other grounds by Stewart v. Federated Dep't Stores*, 234 Conn. 597, 662 A.2d 753 (1995).

It is well established that "[c]onclusions of proximate cause are to be drawn by the jury and not by the court. It becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement that question is one to be determined by the trier of fact." *Id.* (internal quotations and citations omitted).

Connecticut follows the Restatement approach to proximate cause. *Id.* at 758.

> Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

Restatement (Second) of Torts § 442B (1965).

Diocese argues that even if it and St. Columba had a duty to Plaintiff, they should not be liable, because the "proximate cause of the plaintiff's alleged injuries must necessarily have been the alleged sexual misconduct of . . . Sullivan and not any breach of duty on the part of the Diocese . . . or St. Columba." (Def. Diocese's Mem. in Supp. of Mot. to Dismiss at 20–21.)

In *Nutt,* a church and diocese argued that even if they were found to have a duty to plaintiffs who had been sexually abused by a priest, the church and diocese could not be found liable because the plaintiffs' injuries were proximately caused by the priest, not by negligence of the church or diocese. *Nutt,* 921 F.Supp. at 75. In that case, there was a disputed issue of fact regarding whether defendant church and diocese knew of the priest's sexual miscon-

duct. *Id.* Because it was not clear how much the defendants knew about the misconduct, the court held that it could not "determine, as a matter of law, that the defendants' alleged negligence in supervising Doyle was not the proximate cause of the plaintiffs' injuries." *Id.*

■ Applying the reasoning of the Restatement, we must conclude, as the court did in *Nutt* that there is a possibility that if Defendants had knowledge regarding Sullivan's misconduct, Defendants could have been a proximate cause of injury to Plaintiff. Therefore, we would need to know what level of knowledge Defendants had about Sullivan's alleged misconduct, because they would only be relieved of liability if Plaintiff's alleged harm was not within the scope of risk created by their conduct.

At this point we simply do not have enough facts regarding Defendants' knowledge of Sullivan's alleged misconduct to make a determination regarding whether Defendants could have proximately caused the harm. A motion to dismiss is often ill-suited for disposing of proximate cause without the benefit of evidence indicating the Defendants' knowledge, *see Deglin v. Norwich Free Acad.,* No. 546339, 1999 WL 231610, at *2 (Conn.Super. Apr. 7, 1999), and it would be would be premature and inappropriate to dismiss the negligence claim at this stage of the pleadings, even though Plaintiff may have difficulty ultimately proving knowledge, and therefore, proximate cause.

Accordingly, we DENY Defendants' Motion to Dismiss Count Eight.

### III. Ninth Count—Negligent Infliction of Emotion Distress

The Ninth Count incorporates through reference all of the allegations set forth in paragraph ten of the Eighth Count, and

Defendants argue that the Ninth Count should be dismissed for the same reasons they articulated for dismissing the Eighth Count. As this court was not persuaded by Defendants' arguments to dismiss the Eighth Count, neither will we dismiss the Ninth Count. Based on our reasoning for sustaining the Eighth Count, we accordingly DENY Defendants' Motion to Dismiss Count Nine.

## IV. Tenth Count—Breach of Fiduciary Duty

██ Under Connecticut law, a fiduciary relationship is "characterized by a unique degree of trust and confidence between the parties, one of whom has a superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Dunham v. Dunham*, 204 Conn. 303, 322, 528 A.2d 1123 (1987). The Connecticut Supreme Court has "refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." *Alaimo v. Royer*, 188 Conn. 36, 41, 448 A.2d 207 (1982) (internal quotation marks and citations omitted). Accordingly, Connecticut courts have not articulated clear guidelines for determining whether a fiduciary relationship exists between a parishioner and a priest or diocese.

The leading authority on this issue is the Second Circuit's determination that it is possible for a jury to find a fiduciary relationship between a diocese and a parishioner who had been abused by a . priest. *Martinelli*, 196 F.3d at 429. However, in that case, the diocese was connected to parishioner, Martinelli, in numerous ways. For example, the diocese ran the high school that Martinelli attended, knew that

Martinelli participated with a group of boys in sessions with Father Brett who acted as a mentor and spiritual advisor, encouraged Brett to work with the youth of the church, and received reports from other victims whom Brett had abused. *Id.* at 429–30. The court determined that through Martinelli's involvement in "particular activities . . ., including those which the [d]iocese sponsored, [he] had a particularly close relationship with the [d]iocese from which a fiduciary duty might arise," and because the diocese had received information about Brett's misconduct, a jury could have determined that the diocese had breached that duty. *Id.*

██ In contrast, all that Plaintiff has alleged in this case is that because of Diocese's status as a religious organization governing the Roman Catholic churches within its jurisdiction and St. Columba's status as a Roman Catholic church, they occupied positions of trust and confidence as to Plaintiff. (Compl. at 15, Tenth Count ¶¶ 10–11.) And, based on those positions of trust and confidence, they owed a fiduciary duty to Plaintiff, which they breached. (*Id.* at ¶¶ 12, 14.)

Even though we must accept all of Plaintiff's factual allegations as true, Plaintiff has not alleged enough to indicate a unique situation that supports a fiduciary duty claim. Unlike *Martinelli*, there is no indication that Plaintiff attended schools run by Defendants; was involved with youth programs, encouraged by Defendants; or was in any other way connected to Defendants demonstrating a unique degree of trust and confidence. Although some courts have acknowledged a fiduciary duty between priest and parishioner, fiduciary relationships between a diocese and parishioner have only been found in unique circumstances. *See, e.g., Martinelli*, 196 F.3d at 430; *Moses v. Diocese of Colo.*, 863 P.2d 310, 323 (Colo.1993) (diocese assumed fiduciary duty when it acted to resolve

problems stemming from a sexual relationship between a priest and parishioner); *Doe v. Hartz*, 52 F.Supp.2d 1027, 1064 (N.D.Iowa 1999) (granting motion to dismiss where parishioner failed to adequately allege basis for diocese's fiduciary duty, because parishioner had not had any contact with the diocese prior to the priest's misconduct).

Accordingly, we GRANT Defendants' Motion to Dismiss Count Ten without prejudice to Plaintiff amending the complaint to allege sufficient facts indicating that a unique degree of trust and confidence existed between Defendants and Plaintiff creating a fiduciary relationship.

**CONCLUSION**

For the reasons set forth above, we GRANT Defendants' Motion to Dismiss Counts Seven and Ten without prejudice to Plaintiff's filing an amended complaint in accordance with this Opinion. **[Doc. 39; Doc. 27 in part.]** And, we DENY Defendants' Motion to Dismiss Counts Eight and Nine. **[Doc. 25; Doc. 27 in part.]**

SO ORDERED.